# IN THE UNITED STATES DISTRCT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **BRENDA LEDBETTER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 5:05-CV-329 (CAR)** |
| | : | |
| **PRUITT CORPORATION, a Delaware** | : | |
| **Corporation,** | : | |
| | : | |
| **Defendant.** | : | |

_____

### *ORDER ON PLAINTIFF'S MOTION FOR*
### *CERTIFICATION UNDER 29 U.S.C. § 216(B)*

Plaintiff Brenda Ledbetter ("Ledbetter") filed a complaint in this Court on behalf of

herself and other employees similarly situated asserting violations of the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and seeking unpaid minimum wages and overtime

compensation.  Ledbetter asks this Court to conditionally certify this case as a collective action

under § 216(b) of the FLSA and to authorize statewide notice to all employees employed by

Defendant in the last three years to inform them of their right to opt-in to the suit.  Since the

filing of the Complaint, five potential plaintiffs have filed consents to become party plaintiffs

("opt-in plaintiffs").  Currently pending before the Court are Plaintiff's Motion for Certification

under 29 U.S.C. § 216(b) [Doc 27], Defendant's Motion to Strike Untimely Affidavits and

Consent to Sue Notices [Doc 46], and Defendant's Motion for Leave to File Answer to

Plaintiff's First Amended Complaint Out of Time [Doc 48].  For the reasons discussed below,

Plaintiff's Motion for Certification under 29 U.S.C. § 216(b) [Doc 27] is **DENIED**.  Therefore,

Defendant's Motion to Strike Untimely Affidavits and Consent to Sue Notices [Doc 46] and

Defendant's Motion for Leave to File Answer to Plaintiff's First Amended Complaint Out of

Time [Doc. 48] are **DENIED AS MOOT**.[1]

# BACKGROUND

Defendant Pruitt Corporation ("Pruitt") contracts with certain professional healthcare facilities throughout the State of Georgia, such as nursing home facilities, home health agencies, and personal care centers, to provide various healthcare-related services to patients in those facilities. Ledbetter and each of the opt-in plaintiffs were hourly wage employees employed at two facilities that contract with Pruitt: Peake Healthcare ("Peake") nursing home in Macon, Georgia, and Hilltop Nursing Home ("Hilltop") in Forsyth, Georgia. Ledbetter and four of the opt-in plaintiffs worked at Peake, while the fifth opt-in plaintiff worked at Hilltop. All were employed in various administrative and patient-care positions.

Ledbetter claims Pruitt engaged in a company-wide practice of failing to pay its employees proper minimum wages and overtime compensation under the FLSA. Ledbetter contends Pruitt had a policy, applied throughout the State of Georgia, to automatically deduct a thirty minute meal period, regardless of whether the employee took a meal period, when employees were not completely relieved of their job duties, in violation of the FLSA, 29 U.S.C. § 206, 29 C.F.R. § 785.19, and 29 C.F.R. Part 516. Such practice, Ledbetter argues, resulted in the denial of pay for some hours worked, both before and after overtime compensation was

---

[1] Defendant's Motion for Leave to File Answer to Plaintiff's First Amended Complaint Out of Time is premised upon Defendant Pruitt Corporation's denial that it is Ledbetter's employer. The Court denies this motion as moot because Pruitt states it will not challenge employer status if the litigation is limited to the Peake facility. (See Def.'s Reply Br., 3 ("Pruitt *has not and is not now* . . . asking the Court to dismiss Pruitt as an improper party in so far as the case is limited to employees of Peake."). Because the Court denies Ledbetter's Motion for Certification, this action involves only the Peake facility, and therefore, for purposes of this litigation, there is no issue regarding whether Pruitt is Ledbetter's employer.

required. Ledbetter seeks to conditionally certify this case as a collective action and to authorize statewide notice to Pruitt's employees under § 216(b) of the FLSA.

## STANDARD FOR CERTIFICATION OF COLLECTIVE ACTION

Section 216(b) of the FLSA governs the certification of collective actions. Section 216(b) permits an employee to bring an action against her employer for violations of the FLSA on behalf of herself and "other employees similarly situated." 29 U.S.C. § 216(b). Section 216(b) also contains a party provision that requires all similarly situated employees to consent in writing before becoming party-plaintiffs. Id.

In deciding whether to authorize certification and notification of opt-in rights to potential members of the plaintiff class, the Eleventh Circuit recommends that district courts adopt a two-tiered approach in order to better manage these complex cases. Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001). The Eleventh Circuit outlines the two-tiered approach as follows:

> At the notice stage the district court makes a decision–usually based only on the pleadings and any affidavits which have been submitted–whether notice of the action should be given to potential class members.
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class. If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery.
> The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the party plaintiffs are dismissed without prejudice. The class representatives–i.e. the original plaintiffs–proceed to trial on their individual claims.

Id. (quoting Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)).

The district courts in this circuit have generally utilized the Hipp two-tiered approach. See e.g., Cameron-Grant v. Maxim Healthcare Servs. Inc., 347 F.3d 1240, 1242 n.2 (11th Cir. 2003) ("Since Hipp, the district courts in our circuit have utilized the two-tiered approach."). However, "[n]othing in [the 11th] circuit precedent ... requires district courts to utilize this approach. The decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court." Hipp, 252 F.3d at 1219 (citations omitted).

In her motion for certification, Ledbetter moves this Court for a conditional certification pursuant to the first stage under Hipp's "fairly lenient standard." This case, however, is in a different procedural posture than that envisioned by Hipp, and therefore a more searching standard of review is appropriate. Ledbetter filed her motion for certification two weeks after the discovery period in this case had expired. "The rationale for the 'fairly lenient standard' is that at the early stages of litigation, plaintiffs have not had time to conduct discovery and marshal the best evidence." Davis v. Charoen Pokphand (USA), Inc., 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004) (citing Hipp, 252 F.3d at 1218). This rationale disappears, however, once a plaintiff has had an opportunity to conduct discovery with respect to a defendant's policies and procedures. Id. (citations omitted). Here, the parties have completed discovery. The Court, therefore, finds it inappropriate to conditionally certify this case pursuant to the first stage of Hipp. Instead, the Court will make a determinative decision as to whether this case is appropriate for a collective action using the more rigorous standard akin to that called for by Hipp in the second stage, when discovery is complete and the matter is ready for trial. After careful consideration, the Court concludes that this is not an appropriate case for a collective

action.

## DISCUSSION

Ledbetter seeks to represent a class comprised of all current and former employees employed by Pruitt in all of its facilities throughout the State of Georgia employed on or after March 1, 2003. The Court will not allow Ledbetter to represent such a statewide class of Pruitt employees. Such a class contains individual employees who have different job responsibilities, who work in different facilities, in different locations, and, most likely, in different working conditions. Futhermore, Ledbetter has filed affidavits in support of her motion for certification from employees employed at only two of Pruitt's facilities: Peake and Hilltop. Ledbetter has not pointed to any employees employed at any other facility who claim to be subjected to employment practices that violate the FLSA. The only evidence of such is Ledbetter's statement in her affidavit that Pruitt's policies applied to other employees throughout the state. This allegation is wholly conclusory and without support.

The Court notes that it could permit notification to and certification of a smaller class consisting only of employees at Peake and Hilltop. However, the Court declines to do so because, as explained more fully below, Ledbetter has not met the "similarly situated" requirement in order for such a collective action to proceed. In order to authorize the class notice necessary for a collective action to proceed, the Court "should satisfy itself that there are other employees of the defendant-employer who desire to (1) 'opt-in' and (2) are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." Dybach v. Fla. Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991). The Court finds that Ledbetter has met the "opt-in" requirement. Five potential opt-in plaintiffs have filed consents to join the

suit, and the Court accepts that there are employees of Pruitt who claim to have suffered wage and hour violations who would join the suit if they had notice of the suit.

The real issue for this Court to decide is whether Ledbetter and the potential collective action members from Peake and Hilltop are "similarly situated" within the meaning of FLSA. The meaning of "similarly situated" is not defined in the FLSA, and the Eleventh Circuit has given courts only general guidance stating that the similarly situated requirement is "more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." Id. at 1095. Although the Court has little guidance as to the exact meaning of "similarly situated," it is clear that Ledbetter bears the burden of establishing that she and the group she wishes to represent are "similarly situated." See Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996). Ledbetter does not identify with particularity the theory upon which she attempts to prove she is "similarly situated" to the other employees in the Peake and Hilltop facilities. One way in which Ledbetter may prove she and the other employees are "similarly situated" is by providing sufficient evidence showing Pruitt engaged in a policy or pattern of FLSA violations. See, e.g., Hill v. Muscogee County Sch. Dist., 2005 WL 3526669, *2 (M.D. Ga. 2005) ("to show that they are similarly situated, plaintiffs may present allegations and evidence to show that defendant engaged in a unified policy, plan, or scheme of FLSA violations") (citing Grayson, 79 F.3d at 1096); Marsh v. Butler County Sch. Sys., 242 F. Supp. 2d 1086, 1094 (M.D. Ala. 2003); Harper v. Lovett's Buffet, 185 F.R.D. 358, 364 (M.D. Ala. 1999). After review of Ledbetter's arguments, the Court cannot imagine any other way in which Ledbetter could prove the "similarly situated" requirement other than to establish that Pruitt engaged in a policy or pattern of FLSA violations. Therefore, the Court analyzes whether Ledbetter meets the "similarly

situated" requirement under this policy or pattern scheme.

In essence, Ledbetter contends that Pruitt's company-wide policy and practice of automatically deducting meal periods from employees' pay during periods in which the employees were not relieved of duty resulted in a pattern of FLSA violations–the denial of pay for some hours worked. In order to sufficiently provide evidence of a pattern or practice of FLSA violations, Ledbetter must make "*substantial and detailed allegations* of FLSA violations and *provide evidence to support* that [the plaintiffs], like other members of the putative opt-in plaintiff class, were the victims of [defendant's] employment practices which resulted in [FLSA] violations." Harper, 185 F.R.D. at 365 (citing Grayson, 79 F.3d at 1097) (emphasis added); see also Marsh, 242 F. Supp. 2d at 1095.

Ledbetter fails to provide sufficiently detailed evidence establishing that Pruitt's policy of automatic meal deductions resulted in a pattern or practice of FLSA violations. Ledbetter only points generally to the deposition testimonies of Norma Cook and Renee Jiles, and to the affidavits of Ledbetter and the five opt-in plaintiffs, which provide the Court with no specific allegations or evidence of FLSA violations as a result of Pruitt's policy to automatically deduct meal periods. Norma Cook, the personnel manager at Peake, and Renee Jiles, the administrator of Peake, simply state that Peake had a policy of automatically deducting thirty minutes for meal periods after five hours of work and that the policy predated their employment. Likewise, Ledbetter and the opt-in plaintiffs' affidavits simply state, almost identically, that Pruitt had a practice of taking deductions from hourly pay for meal periods, even though the employees did not always take breaks. This evidence essentially boils down to what Pruitt admits: Pruitt has a policy of automatically deducting thirty minutes from employees' hourly pay for meal periods.

A policy of automatic meal deductions does not *per se* violate the FLSA. See Enright v. CGH Med. Ctr., 1999 WL 24683, *6 (N.D. Ill. 1999). In fact, the Department of Labor excludes meal periods from compensable work time. 29 C.F.R. § 785.19 ("Bona fide meal periods are not worktime . . . . The employee must be completely relieved from duty for the purposes of eating regular meals. . . . The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.").

The Court is unpersuaded by Ledbetter's argument that Pruitt's policy and practice of automatic deductions is a *per se* violation of the FLSA because Pruitt does not ensure that each employee takes the full meal period each shift. Ledbetter's reliance on Donovan v. Grantham, 690 F.2d 453 (5th Cir. 1982) and Brennan v. Elmer's Disposal Service, Inc., 510 F.2d 84, 88 (9th Cir. 1975) in support of this contention is misplaced. These cases do not hold nor even suggest that employers have an affirmative obligation to ensure that their employees take the full meal period before deducting it from the employees' hours. These cases simply state the well-established rule that "an employee cannot be docked for lunch breaks during which he is required to continue with any duties related to his work." Brennan, 510 F.2d at 88; see also, Donovan, 690 F.2d at 457; 29 C.F.R. § 785.19.

The Court is also unpersuaded by Ledbetter's argument that the similarly situated requirement is met because the implementation of the automatic meal deduction policy to each employee resulted in a pattern of FLSA violations. Ledbetter simply states that Pruitt automatically deducted meal periods even though employees were not completely relieved of their job duties. She provides no other details establishing the particular circumstances surrounding the allegations that Pruitt automatically deducted meal periods while the employees

8

were working.  For instance, she does not identify when the meal periods were taken or what job duties the employees were performing at the time the meal periods were deducted.  Simply claiming a violation of the FLSA will not suffice to meet the "similarly situated requirement." Although deducting time for meal periods when employees are still performing their job duties is a violation of the FLSA (see 29 C.F.R. § 785.19), "the mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences." Barron v. Henry County Sch. Sys., 242 F. Supp. 2d 1096, 1104 (M.D. Ala. 2003).  To conclude otherwise, that is, to conclude that an employee may establish the "similarly situated" requirement simply by claiming violations of the law by the same employer, would be to conclude that any time employees alleged unpaid overtime due from the same employer, such employees would be "similarly situated" and be allowed to proceed with a collective action.  See Barron v. Henry County Sch. Sys., 242 F. Supp. 2d 1096, 1104 (M.D. Ala. 2003).  Such a result is counter to the requirement that plaintiffs make "substantial and detailed allegations of FLSA violations and provide evidence to support" that the plaintiff and the potential collective action members are "similarly situated."  Harper, 185 F.R.D. at 365 (citing Grayson, 79 F.3d at 1097).

In addition, this case is inappropriate for a collective action because each claim will need to be established with an individualized analysis of the specific minimum wage and overtime compensation violations that may have occurred against the individual employee.  Such an individualized analysis runs directly counter to "the economy of scale" envisioned by collective treatment of similarly situated employees under § 216(b) of the FLSA.  See Horne v. United Servs. Auto Ass'n, 279 F. Supp. 2d 1231, 1237 (M.D. Ala. 2003) (discussing § 216(b)'s

competing considerations of "economy of scale" and avoiding the "stirring up of litigation" through unwarranted solicitation).

For the foregoing reasons, this Court will not authorize the class notice necessary for a collective action to proceed under the FLSA.  Plaintiff's Motion for Certification [Doc 27] is **DENIED**, and Defendant's Motion to Strike Untimely Affidavits and Consent to Sue Notices [Doc 46] and Defendant's Motion for Leave to File Answer to Plaintiff's First Amended Complaint Out of Time [Doc 48] are **DENIED AS MOOT**.


      **SO ORDERED**, this 12th day of February, 2007.

                    S/ C. Ashley Royal
                    C. ASHLEY ROYAL, JUDGE
                    UNITED STATES DISTRICT COURT


SSH/aeg